EVERGREEN CEMETERY ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14272.　Promulgated September 28, 1928.

*J. H. Amick, C. P. A.*, for the petitioner.
*E. C. Algire, Esq.*, and *M. N. Fisher, Esq.*, for the respondent.

OPINION.

MILLIKEN: Petitioner kept its books of account on an accrual basis and credited therein for the year 1921 the total contract price of all contracts entered into in 1920 and 1921, the amount of which was $160,900. This is a proper method of accounting provided under the circumstances of this case these various amounts so accrued became due or payable in 1921. By the terms of his contract each purchaser

became bound to pay 30 per cent of the agreed price on 10 days' demand but not before the foundations were started; 30 per cent on 10 days' demand but not before the exterior walls were started; 30 per cent on 10 days' demand but not before the roof was started; and the final 10 per cent on 10 days' demand but not before the building was completed. Upon the happening of each of these events petitioner had the immediate and unrestricted right to recover the installment then due. Whether the recovery of the last installment was dependent upon the tendering of a certificate of ownership is immaterial for tax purposes, since it was within the power of petitioner to make such tender. The payments when made at once became the absolute property of petitioner.

The next question is, Did the total amount of $169,900 fall due in the year 1921? Such is the determination of respondent and petitioner so entered these items on its books. We can not say that both petitioner and respondent were in error, since we are not informed when any of the particular steps recited in the contract were taken. All we know is that petitioner began construction in 1920 and that the building was completed in 1921. We know that all installments on contracts entered into in 1921 became due and payable in that year. We do not know whether 10 days elapsed in 1920 after the foundation was started or when petitioner gave the first or any of the other notices. In the absence of evidence on these points we are compelled to approve respondent's determination, especially as it is in harmony with petitioner's accounting method. It may be that the foundation for the mausoleum was laid in 1920 and petitioner became entitled to or did receive the payments due upon the occurrence of such contingency—we have searched the record without avail to determine if any payments represented in the $160,900 were due or received by petitioner in 1920. It is also true that some of the contracts were canceled and that no sums of money were received thereon. However, if such happened in either 1920 or 1921 we were not informed. It may also be that the cost of the mausoleum determined by the respondent was too low, but petitioner has supplied us with no convincing proof in refutation thereof. We can not supply these omissions in the evidence.

Petitioner asserts that nothing received by it on these contracts became taxable income until either the title was conveyed or the purchaser placed in possession, and in support of this contention cites *Abraham B. Johnson*, 7 B. T. A. 820, and *North Texas Lumber Co.*, 7 B. T. A. 1193. The facts in those proceedings bear no resemblance to the facts in this proceeding, and what was said in those opinions is not applicable to the facts in this case. In *Abraham B. Johnson, supra*, the facts, in effect, were that a contract entered into in 1916

provided for the sale of a ship then under charter party, for the immediate payment of 10 per cent of the purchase price, and the payment of the remainder after the expiration of the charter party and upon delivery of the ship, the ship to remain at the risk of the seller until delivery, with the further provision that the initial payment was to be returned to the purchaser in the event of the loss or nondelivery of the ship. The ship was delivered and the final payment made in 1917, and we held that the gain from the sale was taxable in that year. While that contract was binding and a suit in the nature of specific performance might have been maintained, it is clear that the seller could not have recovered the remaining unpaid purchase price until the delivery of the ship. In North Texas Lumber Co., supra, we held that gain from a sale was taxable in 1917 and were careful to point out that no action could have been maintained in 1916 for the purchase price. A vital difference between the facts in those proceedings and this is that here petitioner had the right to retain all payments made as liquidated damages. Under petitioner's theory it would not be taxable on any payment received and which it could forever retain until it, at its own good will, tendered a certificate of ownership. Such a theory is clearly untenable.

*Judgment will be entered for the respondent.*